Met Life Insurance Company vs. Sharon L. Pate

Case No. 2:14-CV-02558-MCE-AC



**FILED**

FEB 2 9 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

To whom it may concern:

My name is Linda Machell, I am responding to this summons, I am seeking my dad's life insurance. That he had signed over to his children.

Thanks

Linda Machell

*Linda Machell*

Federal Employees Group Life Insurance
Re Claim # 20140505040 Clyde L. Monks.
Case # 2: 14-CV-02558-McE-AC

To whom it may concern:

My name is Linda M. Machell the daughter of Clyde L Monks. My father was being treated for sever Alzheimer's by Dr. Gonzales in February 2011. We felt that we needed a second option for the reason that my father could not hear when asked questions by us. He would guess what we were saying witch most of the time he was wrong. So we took him to the V. A Dr. The doctor there recommended him hearing aids and the Doctor checked him for the Alzheimer's because the previous Doctor had diagnosed him prior and she ran the same tests to confirm. The VA Doctors stated that he had moderate Alzheimer's. My father was married to Beulah L Monks up to the date she left their home on 3-2-2012.

During there marriage he took care of her by driving her to Pancake Palace six to seven times a week twice a day. This place was located 5-7 miles from their home. He would do her sugar count give her meds and shots on a daily basis, he did all the housekeeping due to the fact she was not able to move around due to strokes. She wasn't able to take care of herself and her personal hygiene and he was able to even knowing that he was Diagnosed with onset of Alzheimer's. He took care of her like a care giver during the last five yrs. of their marriage. This includes the daily trips IE; Hair appointments eating the store trips etc. She would be at home while he is out running these errands for her because she didn't have the brain capacity to travel on her own.  When she left 3/2012, she left all the house hold expenses. Her daughter Lavon Hill stated that there was money missing out of my father's bank account, the only money that was missing was to pay the household bills that were past due and current. And the money that Buelah took was half of my dad's money roughly $10,400.00 which was half of what was in the bank account. Most of this money was from his late mother that he had inherited. The money that Buelah took didn't go to any of the household expenses. Prior to one of the court dates the Judge issued Buelah to move back into the home and with the terms to pay the Mortgage and utilities. Buelah never moved back in and in the end result the house went into foreclosure. My father got the house out of the foreclosure and moved himself back home with a care giver in aprox. 2013 until his last day.

From the time of my father's death till current Buelah hasn't paid any mortgage. Buleahs daughter Lavon states that they were the only care takers for both of them and no one else did. Lavon lives in Montana and has for several years. Michele, Buelahs other daughter had gone over there to help but also was paid for it. In the middle of March 2012 my father asked us to get a lawyer to write up a Will. I was unaware that he changed his life insurance, we took him to the lawyer Daniel Hunt. Address 3620 American River Dr. Suite 110 Sacramento CA. 95864. March 21, 2012.

The Lawyer was aware of his illness, he and the lawyer went into his office and the lawyer stated that he was able to write up his Will and they did. No one knew what was discussed between him and the lawyer or what was in the Will. My father had told me that he was ill and

that he wanted to make things right between his children. He said it was always about Buelah and her kids, and he felt that he wanted to something for his own and at that time I didn't know what he meant until we got the Will. I am sending page 4 of his Will where he disinherits Buelah and her children. As you see on his life insurance this was his signature and his wishes.

Regarding the death of my father at the funeral home. Sharron my sister had court papers that stated divorce and there attorney Mark Rose who was to file it. Mark Rose never filed. So then there had to be another court date. Instead of making it divorced because my father is now deceased. Bulah wanted to trade the Life insurance for the home and keep the last name so she could keep his insurance and retirement. At this point Sharron my sister was considered a joiner. Sharron traded her part of the insurance for the home and for Buelah to keep the last name and insurance. All this time Michele as Buelahs executor knew that the home was in foreclosure. It was in one day before going into auction. Witch she never stated. They had everything sent to their address and we had no idea that this was going on. This is the second time that we had to get the home out of foreclosure since she left my dad, but was trading something they knew was going to be auctioned. The steps in auctioning the home takes about 6 mo. to a yr. they had full knowledge and didn't share that with us. Since they had everything sent to their home.

This shows me that they want everything and not honoring Clyde L Monks Will or wishes. Regarding Buelahs letter, she loved my father so much that they wouldn't talk on the phone. When he drove over to Michele's house they wouldn't answer the door. She pushed him away way before his death. This statement should show you that two DR.s who diagnosed him with Alzheimer's with two different forms. Yet he was able to perform all the tasks above, how can he be incompetent but he was able to do all these tasks. To me this shows that he was able to function normally knowing that he got his hearing aids. The Life insurance and the Will was all his doings and I wish to honor his wishes.

Thanks:

Linda M. Machell
Linda Machell
916-247-5499

## 2.5 INVASION OF PRINCIPAL FOR INCOME BENEFICIARY (SETTLOR)

Should the Income Beneficiary be at any time in need, for any reason, of funds for his proper care, support, or maintenance, the Trustee may pay to or apply for the benefit of the Income Beneficiary, in addition to the net income of the Trust Estate, such amounts from the principal of the Trust Estate, up to the whole thereof, that the Trustee may from time to time, in the Trustee's discretion, deem necessary or advisable for his proper care, support, or maintenance.

## 2.6 PAYMENTS AFTER DEATH OF INCOME BENEFICIARY 

The Spouse of the Settlor, namely **BEULAH LEVON MONKS**, and her issue are hereby specifically omitted and disinherited. The aforesaid Spouse of the Settlor shall be considered to have predeceased the Settlor, without issue surviving, for any and all purposes under this Trust. Neither the aforesaid Spouse of the Settlor nor her issue shall share in the Trust estate or any part or portion thereof under any circumstances.

Upon the death of the Settlor, this Trust shall terminate and all of the Trust Estate then in the possession of the Trustee, or Successor Trustee, including therein assets received by reason of the death of the Settlor, shall be distributed in equal shares, to the children of the Settlor.

(a) In the event that a child of the Settlor shall fail to survive the death of the Settlor for a period of thirty (30) days, such deceased child's share shall be distributed to his or her issue, by right of representation.

(b) In the event that a child of the Settlor shall fail to survive the death of the Settlor for a period of thirty (30) days, without issue surviving for said period, such deceased child's share shall be added to and shall proportionally augment the share(s) of the survivor(s) of the children of the Settlor.